[No. B022344. Second Dist., Div. Three. July 28, 1987.]

FREDERICK R. WEISMAN et al., Plaintiffs and Respondents, v. SACHIKO T. BOWER et al., Defendants; SHEA & GOULD, Objector and Appellant.

## COUNSEL

Shea & Gould, Jerold Fagelbaum and John G. Connolly for Objector and Appellant.

Crowley, Lebow & Cuneo, Arthur J. Crowley, Mark A. Brodka and Sarah J. Hoover for Plaintiffs and Respondents.

## OPINION

**LUI, J.—**

### SUMMARY

██ ██ ██ ██ The law firm of Shea & Gould, counsel for Sachiko T. Bower and Preferred Capital International, Inc. (Bower), appeals from an order requiring it to pay $2,500 to Crowley, Lebow & Cuneo, counsel for Frederick K. Weisman, Frederick Weisman Company, and Rare Properties, Inc. (Weisman), as sanctions under Code of Civil Procedure section 128.5 for filing a "frivolous" motion for a protective order.[1]

---

[1] An order imposing sanctions is appealable as a final order. (*Lieppman* v. *Lieber* (1986) 180 Cal.App.3d 914, 919 [225 Cal.Rptr. 845].)

The order complained of directs Shea & Gould to pay the sanctions. Although Shea & Gould is not a party to the underlying action, it is a party of record in the collateral matter by

We conclude that, in light of the special circumstances of this case and the broad discretion trial courts have to grant motions for a protective order, the motion was not so totally and completely without merit as to be "frivolous." Further, there is no evidence in the record that the motion was brought in bad faith, for the sole purpose of harassing or causing unnecessary delay. Thus, the imposition of sanctions under section 128.5 was not warranted.

However, the trial court did have authority under section 2019, subdivision (b)(1) (operative until July 1, 1987), to impose on Bower the requirement to pay Weisman's reasonable costs and expenses in opposing the motion for a protective order.[2] Therefore, we reverse and remand the matter to allow the trial court to exercise its discretion under section 2019.

## FACTUAL AND PROCEDURAL BACKGROUND

Bower sued Weisman in the State of New York. Weisman then filed a complaint against Bower in Los Angeles County Superior Court, alleging conversion, fraud, breach of contract, and other counts, and requesting multimillion dollar compensatory and punitive damages. Bower filed a motion to quash service of summons and complaint in the California action, challenging the superior court's jurisdiction over her as a defendant or, in the alternative, to dismiss or stay the action because of forum non conveniens. The hearing on this motion was continued twice by stipulation at Weisman's counsel's request while the parties engaged in discovery on the issue of jurisdiction. One hundred and six requests for admissions, sixty-one

---

virtue of the trial court's order and, therefore, has standing to appeal. (See *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942].)

Hereinafter, all statutory references are to the Code of Civil Procedure, unless otherwise indicated.

Section 128.5 provides: "(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. . . .

"(b) For purposes of this section:

"(1) 'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint. The mere filing of a complaint without service thereof on an opposing party does not constitute 'actions or tactics' for purposes of this section.

"(2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party.

"(c) Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order. [¶] . . . ."

[2] Section 2019, subdivision (b)(1) (effective until July 1, 1987), provided in pertinent part: ". . . In granting or refusing [a protective] order the court may impose upon either party . . . the requirement to pay such costs and expenses, including attorney's fees, as the court may deem reasonable."

interrogatories with multiple subsections, and sixteen requests for production of documents were served on Bower. After Bower's responses and objections were served, Weisman noticed her deposition.[3]

Bower then filed an "Ex Parte Application . . . for an Order Under CCP § 2019(b)(1)" cancelling the deposition or, alternatively, an order staying the deposition pending a noticed motion for a protective order. After a hearing, the deposition was stayed, and Bower filed a motion for a protective order.[4] At the hearing on this motion, the court found "not a single scintilla of grounds" for preventing the deposition of Bower.

Weisman filed a motion for sanctions under sections 128.5 and 2019, subdivision (b)(1). In the opposition to the motion, Bower's attorney listed five factors on which the motion for a protective order had been based.[5] After a hearing, the motion was granted, and the court ordered Bower's attorneys to pay Weisman's attorneys the sum of $2,500, stating that: ". . . (2) Defendant Bower's Motion for Protective Order re Deposition

---

[3] In her responses to Weisman's requests for admissions, Bower objected that "the discovery sought under the guise of jurisdictional discovery in this California action is really sought to obtain an advantage with respect to issues raised by Mrs. Bower in her complaint in her New York litigation. Furthermore, the totality of Plaintiffs' Document Requests, Interrogatories, and Requests for Admissions are burdensome and overbroad."

[4] Bower offered three arguments in support of the motion for a protective order: "1. Plaintiffs, through the use of interrogatories, requests for admission, and requests for production of documents have had an ample opportunity to do discovery on the issues of jurisdiction on this action; [¶] 2. Plaintiffs have waited an inordinate amount of time to notice this deposition at the eleventh hour before the scheduled hearing on the Motion to Quash . . . ; [¶] 3. The noticing of the deposition is apparently an attempt to harass and annoy Mrs. Bower since plaintiffs' counsel cannot point to any additional information which he needs, and which [Bower's attorneys] have offered to supply, relevant to the issue of jurisdiction which is not already covered by documents produced and in the possession of the plaintiffs, responses to requests for admission, and responses to interrogatories."

[5] These factors were: "(a) Plaintiffs['] initial position that it would not be necessary to take defendant's deposition and the unexplained reversal of this position after defendants have incurred substantial time and expense in responding to written discovery on the same issues[;] [¶] (b) Prior courtesies to plaintiffs' counsel, including the granting of two continuances of the defendants' jurisdictional motions, which were subsequently abused by the plaintiffs in an attempt to gain tactical advantage; [¶] (c) The voluminous prior written discovery purportedly on the issues of jurisdiction [sic] to which the defendants have responded; [¶] (d) The discovery barrage which the plaintiffs had begun in the New York Federal Court action in an apparent attempt to overburden the defendants with a two-coast discovery plan; and [¶] (e) The plaintiffs' unjustified attempt to increase the costs and burden involved in taking the deposition of [Bower] by bi-furcating [sic] the deposition into separete [sic] jurisdictional and non-jurisdictional sessions."

Bower's attorney also noted that the commissioner who had granted the application for an order staying the deposition had asked a number of questions regarding the status of discovery, and had given no indication that the proposed motion for a protective order was either ill-founded or frivolous.

was brought with a feeling of spite, was frivolous and was brought in bad faith under Code of Civil Procedure § 128.5; [¶] (3) Defendant Bower's Motion for Protective Order re Deposition was intended to and did cause unnecessary delay to the parties, to the Court, and unnecessarily caused Plaintiffs' counsel increased expense; [¶] (4) Defendant's Motion for a Protective Order was brought out of either vindictiveness or to thwart Plaintiffs' perfectly reasonable discovery aims of taking Defendant's deposition for the initial time on the limited issue of jurisdiction. . . ."

Appellant filed a timely notice of appeal.

### CONTENTIONS ON APPEAL

Appellant's contentions may be summarized as follows:

1. The trial court abused its discretion by imposing sanctions.

(a) The motion for a protective order was not totally without merit; it was arguably meritorious under the standards provided in *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 382 [15 Cal.Rptr. 90, 364 P.2d 266];

(b) Even if the motion lacked merit, there is no evidence that it was made in bad faith or for an improper purpose.

2. The court's order failed to set forth in detail the circumstances justifying the sanctions as required by section 128.5.

Weisman requests that this court impose attorneys' fees and costs against appellant for filing a frivolous appeal.

### DISCUSSION

 Section 128.5 permits the trial court to impose sanctions under certain narrowly defined conditions. Sanctions are warranted only if the moving party meets its burden of proving that the opposing party's action or tactic was (1) totally and completely without merit, measured by the objective, "reasonable attorney" standard, or (2) motivated solely by an intention to harass or cause unnecessary delay, measured by a subjective standard. (See § 128.5; Evid. Code, § 500; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 [183 Cal.Rptr. 508, 646 P.2d 179].)[6] Whether sanctions are warranted depends on an evaluation of all the circumstances surrounding the questioned action. (See *Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 649 [192 Cal.Rptr. 57].)

---

[6]Of course, as a practical matter, the moving party will normally assert that the action lacks legal support, and the burden will then shift to the other party to cite authority for the action.

Even before the latest amendment to section 128.5, the courts of this state imposed sanctions only in the clearest of cases, to penalize the most egregious misconduct. This judicial restraint was motivated by serious concerns about the danger of hampering the valid assertion of a litigant's rights. (See *In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 650-651; *Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 669-670 [213 Cal.Rptr. 654]; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist.* (1983) 140 Cal.App.3d 111, 117 [189 Cal.Rptr. 208].)

The Legislature clarified the conditions under which sanctions may be awarded by its amendment of section 128.5 in 1985. While the previous version of the section (applied in the cases cited above) permitted sanctions for "tactics or actions not based on good faith which are frivolous or which caused unnecessary delay," the current version limits sanctions to bad-faith tactics or actions that are (1) frivolous, i.e., *"totally and completely* without merit or . . . for the *sole purpose* of harassing an opposing party," or (2) *"solely intended* to cause unnecessary delay." (Cf. Stats. 1984, ch. 355, § 1 with Stats. 1985, ch. 296, § 1, italics added.)

Under the current version of section 128.5,[7] once a party shows that his or her action was arguably meritorious (under the circumstances and in light of existing standards for the particular area of law within which the action was taken), the logical conclusion is that the party's motive was probably not *solely* to harass or cause unnecessary delay, and that sanctions are probably not warranted. Of course, the fact that an action is arguably meritorious is not conclusive proof that the action was not brought solely to harass or delay. However, the party moving for sanctions has the burden of proving that the arguably meritorious action was taken for improper motives. (See Evid. Code, § 500.)

 In this case, appellant contends that, under the existing standards for motions for a protective order (i.e., § 2019, subd. (b)(1) [operative until July 1, 1987], and *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355), the motion was arguably meritorious, and that there is no evidence in the record that the motive in requesting a protective order was improper. Thus, appellant concludes that the trial court abused its discretion by imposing sanctions under section 128.5. (Citing *Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170 [230 Cal.Rptr. 289].) We agree.

---

[7] The motion for sanctions in this case was made in June 1986. Thus, the current version of section 128.5 is applicable.

## A. *The Motion Was Arguably Meritorious*

The trial court in this case appears to have assumed that a motion for protective order on an initial deposition is always inherently devoid of merit.[8]

■ This is not so. In ruling on a motion for protective order, even in the case of an initial deposition, the trial court must consider the "particular facts" of the case. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d at pp. 382-383.) After doing so, the court exercises wide discretion, and may grant the motion if it concludes that a protective order is necessary to "limit[ ] attempted discovery which, while it may come within the rules established by the other code sections, offends the sense of justice and reason." (*Id.,* at p. 379.)

■ Here, the particular facts included: a history of discovery in both this case and the related New York action which apparently included the deposition of Bower in the New York action; the fact that only the limited issue of jurisdiction was contested; the fact that extensive written discovery had been completed, and that Bower's attorney may have offered to provide more information; the fact that all of Weisman's discovery requests followed Bower's stipulations to continue the hearing on the motion to quash, which may have been made with the understanding that no further discovery would be needed.

---

[8] At the hearing on the motion for protective order, the following colloquy took place:

"MR. CONNOLLY: [Bower's attorney]: Your Honor, I believe there is an attempt here to harass my client.

"THE COURT: Oh, no.

"MR. CONNOLLY: I base that on —

"THE COURT: A deposition? No. No. No. No. . . . [T]his is her initial deposition?

"MR. CONNOLLY: Yes, Your Honor.

"THE COURT: . . . Mr. Crowley [Weisman's attorney] has been around a long time—he's got a lot better things to do than to harass people by taking a deposition. [¶] . . . [H]arassing a person just by taking the [initial] deposition? There's been absolutely no showing of that, and, indeed, I don't see how there could be.

". . . . . . . . . . . . . . . . . . . . .

"THE COURT: I just think, Mr. Connolly, you are wasting a lot of time here. . . . [Y]ou wasted everyone's time. You haven't shown me a single—not a single scintilla of grounds for preventing a party from their deposition rights. [¶] Now, the fact that they have some interrogatories or other written discovery, well, we all know that that's fine, but it never takes the place of . . . face-to-face discovery.

". . . . . . . . . . . . . . . . . . . . .

"MR. CONNOLLY: . . . [I]t was our opinion . . . that they had done more than enough discovery, that they had misrepresented the reason for —

". . . . . . . . . . . . . . . . . . . . .

"THE COURT: . . . How can it possibly be enough discovery when there's never been a prior deposition? That's almost a contradiction in terms."

While these facts do not constitute a compelling argument for a protective order, and while we do not suggest that the court should have granted the motion in this case, it would not necessarily have been an abuse of discretion to do so. The court might have ordered, for example, that Bower's deposition be stayed pending receipt of more complete answers to Weisman's written discovery requests. In light of this conclusion, we cannot rule that, under the facts of this case, Bower's motion for a protective order was "totally and completely without merit."

B. *The Evidence in the Record Does Not Support a Finding of Improper Motive*

As discussed earlier, the fact that an action is arguably meritorious does not compel the conclusion that the action was taken for meritorious motives. ■ However, in this case, there is no evidence in the record that the motion for protective order was filed solely for purposes of harassment or delay. We note that the majority of delay in this case was the result of continuances requested by Weisman. Further, we find that the evidence the trial court apparently relied on in concluding that "spite" or "vindictiveness" motivated Bower's attorney more correctly supports the conclusion that the attorney, Mr. Connolly, was motivated by a desire to protect his client from perceived attempts at harassment.

At the hearing on the motion for sanctions, the trial court concluded that the motion for protective order had been made "with a feeling of spite" because "[a]ll I heard here [at the hearing on the motion for protective order] was that *because the plaintiff[s]were bad people, and they weren't cooperating with you on some other aspects,* that it was going to be burdensome and oppressive to have this woman sit in New York and have her deposition taken . . . ." (Italics added.) The transcript of the hearing on the motion for protective order does not support this interpretation of Connolly's remarks. Connolly argued that Weisman's attorneys' failure to cooperate (e.g., allegedly requesting stipulations for a continuance in order to review information in hand, then using the newly acquired time to demand additional discovery) was evidence that they were attempting to harass Bower. Although the trial court need not agree with Connolly's interpretation of the meaning of Weisman's attorneys' action, and although *objectively* it may not be reasonable to make this interpretation, this is clearly what Connolly, *subjectively,* believed when he moved for protective order. Thus, the requisite evidence of improper motive is lacking.

CONCLUSION

Section 128.5, when properly applied, punishes the abuse of the judicial system by irresponsible litigants, but does not block free access to the courts or chill the vigorous assertion of clients' rights.

In this case, because the motion for a protective order was arguably meritorious, and because there is no evidence that it was made solely for purposes of harassment or delay, we conclude that the imposition of sanctions under section 128.5 was not warranted. Therefore, we need not address appellant's second contention.

However, as we noted above, Weisman's motion for sanctions was brought under section 2019, subdivision (b)(1), as well as section 128.5. ■ A finding of good faith on the part of a party unsuccessfully moving for a protective order does not prevent a trial court from taxing costs against that party under section 2019. (See *Flynn* v. *Superior Court* (1979) 89 Cal.App.3d 491, 497 [152 Cal.Rptr. 796]; § 2019, subd. (b)(1) [effective until July 1, 1987].) Therefore, the court may wish to exercise its discretion and impose on Bower—but not on her attorneys—the requirement to pay such costs and expenses as the court may deem reasonable.

### DISPOSITION

The order imposing sanctions under section 128.5 is reversed. The matter is remanded so that the trial court may exercise its discretion under former section 2019, subdivision (b)(1). Each party shall bear its own costs on appeal.

Danielson, J., concurred.

**KLEIN, P. J.**—I concur in the judgment. However, I have reservations about the rationale expressed by the court and the decision to publish this opinion.