[No. A043549. First Dist., Div. Five. Jan. 27, 1989.]

LAWRENCE G. LOSSING, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
JENNIFER MASON et al., Real Parties in Interest.

## COUNSEL

Jess B. Millikan, Andrew B. Downs, Neil E. Olson and Derby, Cook, Quinby & Tweedt for Petitioner.

No appearance for Respondent.

William H. Ahern and Ahern & Mooney for Real Parties in Interest.

## OPINION

**KING, J.**—In this case we hold that a malicious prosecution action against an attorney will not lie for failing to prevail on an order to show cause re contempt brought to enforce a discovery order in ongoing litigation. If the proceeding was brought in bad faith or for harassment or misuse of the discovery process, the appropriate relief is an award of sanctions against the attorney.[1]

Petitioner Lawrence G. Lossing is a defense attorney in an underlying personal injury action filed on behalf of Jennifer and John Mason by their attorney William H. Ahern, real parties in interest herein. Alleging problems in obtaining the depositions of the Masons, Lossing sought and obtained an order compelling the Masons to appear at a specified time and place to have their depositions taken. Seeking to enforce the discovery order, Lossing filed an order to show cause re contempt against real parties in interest alleging their wilful failure to comply with the court order. After a hearing, the court discharged the order to show cause.[2]

---

[1] Since the client was not named as a defendant in the malicious prosecution action, we are not called upon to determine if there is any reason why this holding would not be equally applicable to the client on whose behalf the order to show cause was brought.

[2] The record before us does not contain a copy of the court's order, only a clerk's notice of ruling.

Thereafter, real parties in interest filed a complaint against Lossing for damages for malicious prosecution and for negligent and intentional infliction of emotional distress. The complaint alleged Lossing did not honestly, reasonably and in good faith believe the Masons to be guilty of contempt and acted maliciously to intimidate the Masons and coerce them to settle their underlying case.

Lossing filed a general demurrer to the complaint. The superior court sustained the demurrer to the causes of action for negligent and intentional infliction of emotional distress without leave to amend, leaving only the causes of action for malicious prosecution. ■ The Masons and Ahern have not challenged the court's action but Lossing petitioned this court for a writ of mandate contending his demurrer to the causes of action for malicious prosecution should also have been sustained without leave to amend. We agree.

In *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916 [134 Cal.Rptr. 145], after a final decree of dissolution, the former wife brought contempt proceedings against her ex-husband for failing to pay attorney fees and spousal support. She served him with a request for an admission that he had forged her endorsement of a joint income tax refund check. Before the hearing, the wife informed the court the amount involved had been paid, and the court ordered the motion re contempt and the request for admissions off calendar. Husband then filed an action for malicious prosecution, contending dismissal of the request for admissions was a termination favorable to him. The appellate court held a request for admissions was not "an ancillary proceeding sufficient to support a malicious prosecution complaint." (*Id*. at p. 922.) "[A] request for admissions is not a separate proceeding and has no independent existence. It will not support a malicious prosecution complaint." (*Ibid*.) Husband did not attempt to state a cause of action for malicious prosecution based on the contempt proceeding itself.

In *Chauncey* v. *Niems* (1986) 182 Cal.App.3d 967 [227 Cal.Rptr. 718], an ex-husband filed a suit for malicious prosecution against his ex-wife and her attorney for having brought a postjudgment order to show cause re contempt and an order to show cause for modification of visitation and support awards against him. The court held that the voluntary dismissal by the moving party of an order to show cause re contempt and the partial granting of the motion for modification made it impossible for the plaintiff to establish, as he must in a malicious prosecution action, that the proceedings were terminated in his favor. In dicta, the *Chauncey* court said that such proceedings, if terminated favorably to the responding party, could constitute the basis for a malicious prosecution action. As will be seen, we strongly disagree with this dicta and hold that such proceedings, even if terminat-

ed in favor of the responding party, cannot constitute the basis for a malicious prosecution action.

In opposing the instant petition, real parties state the "real issue before this court is whether contempt is a separate proceeding." But classifying contempt as a separate proceeding rather than an ancillary proceeding does not alone determine whether a malicious prosecution action will lie. In *Pace v. Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476 [161 Cal.Rptr. 662], the court, looking to the statutory scheme of which a small claims action is a part, concluded that a cause of action for malicious prosecution cannot be grounded on institution of a small claims proceeding. "To permit an action for malicious prosecution to be grounded on a small claims proceeding would frustrate the intent of the Legislature in adopting an expeditious and informal means of resolving small disputes, would inject into a simple and accessible proceeding elements of time, expense, and complexity which the small claims process was established to avoid, and would require a prudent claimant to consult with an attorney before making use of this supposedly attorney-free method for settling disputes over small amounts." (*Id.* at p. 479.)

Viewing a contempt proceeding in the context of the discovery statutes, we disagree with the dicta in *Chauncey* and conclude a malicious prosecution action cannot be grounded on the institution of a contempt proceeding in an ongoing action, for several reasons. Contempt is one of five sanctions which may be imposed for misuse of the discovery process. (Code Civ. Proc., § 2023.) Although all five sanctions are ancillary to the ongoing action, only contempt bears the indicia of "independence" which real parties contend render it a sufficiently separate proceeding. To permit a malicious prosecution action when a party has chosen contempt over one of the other sanctions would inject into the choice of sanctions an element unrelated to the appropriateness of the sanction. Furthermore, the statutory discovery scheme itself provides a sanction if contempt is chosen without justification. Monetary and contempt sanctions against an attorney are authorized if the attorney engages in conduct that is a misuse of the discovery process. (Code Civ. Proc., § 2023, subd. (b).) Monetary sanctions may also be awarded against "one unsuccessfully asserting that another has engaged in the misuse of the discovery process, or on any attorney who advised that assertion, or on both." (Code Civ. Proc., § 2023, subd. (b)(1).) If the contempt proceeding was a bad faith action brought without merit or for harassment, sanctions are also available under Code of Civil Procedure section 128.5. (See *Weisman v. Bower* (1987) 193 Cal.App.3d 1231 [238 Cal.Rptr. 756].) Thus the Legislature has provided a specific sanction for

the precise misuse of discovery or bad faith alleged here.[3] As in *Pace* v. *Hillcrest Motor Co., supra,* 101 Cal.App.3d 476, to allow a malicious prosecution action would frustrate the intent of the Legislature to vest the courts with broad power to control proceedings. (Code Civ. Proc., § 128.) Courts should not hesitate to use these powers to curb inappropriate conduct of counsel.

Perhaps even more significant is the effect a malicious prosecution action would have on the ongoing underlying action. It would create a possible conflict of interest between attorney and client probably necessitating a substitution of counsel in the underlying action. Given the specific sanction provided in the discovery statutes, it would also threaten institution of unnecessary litigation. It might require the attorney in the underlying action to disclose the contents of his or her file as a result of discovery in the malicious prosecution action. In *Babb* v. *Superior Court* (1971) 3 Cal.3d 841 [92 Cal.Rptr. 179, 479 P.2d 379], the Supreme Court considered whether a defendant in a civil action could file a cross-complaint seeking a declaratory judgment that the action was being maliciously prosecuted. Concluding the rule of favorable termination should be applied to preclude such a cross-complaint the court reasoned: "Since malicious prosecution is a cause of action not favored by the law [citations], it would be anomalous to sanction a procedural change which not only would encourage more frequent resort to malicious prosecution actions, but would facilitate their use as dilatory and harassing devices." (*Id.* at p. 847.)

Given that a statutory remedy is available and malicious prosecution is a disfavored cause of action, we conclude contempt proceedings to sanction discovery abuse are ancillary proceedings without sufficient independence to support a cause of action for malicious prosecution. The trial court possesses adequate power to award sanctions as full compensation for any inappropriate conduct of counsel in the underlying action.[4]

---

[3] We note that section 128.5 was not enacted until after the trial court's decision in *Chauncey*. In enacting section 128.5 the Legislature intended "to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized by the interpretation of the law in Baugess v. Paine (1978) 22 Cal.3d 626." (Stats. 1981, ch. 762, § 2.) We also note that both *Twyford* and *Chauncey* were marital dissolution cases in which passions often run high. The Legislature recently adopted a policy to promote settlement and reduce the costs of litigation in family law litigation by imposing additional attorney fees as a sanction against a party or attorney who frustrates this goal. (See Civ. Code, § 4370.5; *In re Marriage of Norton* (1988) 206 Cal.App.3d 53 [253 Cal.Rptr. 354]; *In re Marriage of Melone* (1987) 193 Cal.App.3d 757 [238 Cal.Rptr. 510].)

[4] The trial judge, Demetrios Agretelis, told counsel in this case, "My first reaction to this demurrer was this is preposterous. How can they possibly bring a malicious prosecution suit for contempt citation? . . . . I read [*Chauncey* v. *Niems*], reread it. I read it inside out. I don't like it. It doesn't make any sense to me but there it is. [¶] Seems to me it will wreak

Finally, we cannot end this opinion without additional comment. The present proceeding is but one of four similar proceedings now before this Division. Two are malicious prosecution actions brought against opposing counsel in an underlying action for not having prevailed in pursuing statutory remedies to seek enforcement of existing court orders. Attorneys face an impossible dilemma if they are subject to claims of malicious prosecution by opponents in litigation because they vigorously represent their client, yet they are also subject to claims of legal malpractice by their client if they fail to provide the vigorous representation to which the client is entitled. Public policy favors the principle of zealous representation and freedom of access to the courts. (*Grindle* v. *Lorbeer* (1987) 196 Cal.App.3d 1461 [242 Cal.Rptr. 562].) Vigorous representation is to be distinguished from inappropriate conduct, i.e., bad faith, harassment, etc., and we are fully satisfied the trial judges of this state can make that distinction in responding to requests for sanctions.

Our holding in this case is supported by a decision recently issued by our Supreme Court holding that when there is no dispute as to the facts upon which an attorney filed a prior action, it is a question of law for the court whether, as an objective matter, the prior action was legally tenable and thus brought with probable cause negating a subsequent malicious prosecution action. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498].) Language used by the court in that opinion is equally applicable here: "While the filing of frivolous lawsuits is certainly improper and cannot in any way be condoned, in our view the better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct with that first action itself, rather than through an expansion of the opportunities for initiating one or more additional rounds of malicious prosecution litigation after the first action has been concluded. In recent years, the Legislature has taken several steps in this direction, enacting legislation to facilitate the early weeding out of patently meritless claims and to permit the imposition of sanctions in the initial lawsuit—against both litigants and attorneys—for frivolous or delaying conduct. (See, e.g., Code Civ. Proc. §§ 437c, 1038, 128.5, 409.3.) Because these avenues appear to provide the most promising remedies for the general problem of frivolous litigation, we do not believe it advisable to abandon or relax the traditional limitations on malicious prosecution recovery." (*Id.* at pp. 873-874.) Our decision accomplishes the Supreme Court's view of the better means of handling allegedly improper conduct within the initial lawsuits.

---

havoc on courts if every time somebody decides they've been maliciously prosecuted in the course of a proceeding, they can file another action, a separate and independent action." We fully agree with Judge Agretelis.

We conclude by reminding members of the Bar that their responsibilities as officers of the court include professional courtesy to the court and to opposing counsel. All too often today we see signs that the practice of law is becoming more like a business and less like a profession. We decry any such change, but the profession itself must chart its own course. The legal profession has already suffered a loss of stature and of public respect. This is more easily understood when the public perspective of the profession is shaped by cases such as this where lawyers await the slightest provocation to turn upon each other. Lawyers and judges should work to improve and enhance the rule of law, not allow a return to the law of the jungle.

It seems clear that this litigation arose from a fit of pique between counsel in the underlying action. Frivolous litigation, or that brought for purposes of harassment, has no place in our overburdened court system. The taxpayers who bear the cost of providing our judicial system should not have to shoulder the burden of providing a forum for frivolous or absurd litigation.[5]

We have acted after full briefing by the parties, who have been notified that we might act by a peremptory writ in the first instance. (See *Palma* v. *U.S. Industrial Fasteners, Inc*. (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue commanding respondent court to vacate its order of September 8, 1988, insofar as the order overrules the demurrer to the causes of action for malicious prosecution and to issue an order sustaining the demurrer without leave to amend.

Low, P. J., and Haning, J., concurred.

---

[5] Waste of precious taxpayer dollars and tarnishment of the public's perspective of the legal profession are only two of the adverse results from this kind of litigation. Additionally, every member of the bar suffers financially because such litigation is a substantial reason for skyrocketing premiums for legal malpractice insurance. There is no reason to allow one member of the legal profession who becomes upset with opposing counsel to use a professional license to file needless litigation which financially impacts upon every other member of the profession. We have seen references to insurance industry estimates that as many as one of every ten lawyers in private practice in California will be sued within the next year. If this case is any example, that estimate may be too low.