[No. A037223. First Dist., Div. Five. Feb. 8, 1989.]

JAMES PAUL GREEN, Plaintiff and Appellant, v.
DAVID P. UCCELLI, Defendant and Respondent.

COUNSEL

James Paul Green, in pro. per., for Plaintiff and Appellant.

Janet L. Falletti, Bergeron & Garvic, Bernard N. Wolf and Dowgialo & Wolf for Defendant and Respondent.

**OPINION**

KING, J.— ▮▮▮ In this case we hold that withdrawing an order to show cause re contempt from the calendar in a marital dissolution action cannot constitute the basis of an action for malicious prosecution, abuse of process or intentional infliction of emotional distress against the attorney for the moving party. If the order to show cause was brought in bad faith or for harassment or violated the policy in family law cases to promote settlement and reduce the costs of litigation, relief is appropriately sought not through an independent action but through an award of attorney fees and sanctions against the attorney for the moving party within the dissolution action. ▮ Additionally, we hold that an order that the county clerk seal the file in a marital dissolution action cannot be used as the basis for an action for invasion of privacy against the attorney for the other spouse.

James Paul Green appeals from a dismissal after an order sustaining a demurrer to each cause of action of his complaint against David P. Uccelli without leave to amend. The complaint alleged causes of action for invasion of privacy, malicious prosecution, abuse of process and intentional infliction of emotional distress arising out of Uccelli's representation of Mrs. Green in an underlying action in which Mr. Green had filed for nullity and dissolution of their marriage.[1] We affirm.[2]

In August 1985, Green, in ex parte applications, obtained two so-called "confidentiality orders" withholding from public inspection the papers on file in his then pending action for nullity and to dissolve his marriage.[3]

On November 18, 1985, the trial court in the underlying dissolution action issued an order to show cause re contempt, based on the declaration of Uccelli, representing Green's wife, that Green had failed to pay court-ordered attorney fees. According to Green, the order to show cause re contempt was dismissed for lack of prosecution. Uccelli maintains he took the contempt proceeding off calendar when the attorney fees were belatedly paid. This factual dispute is irrelevant in view of our holding.

On August 27, 1986, the trial court issued a second order to show cause re contempt, based on Uccelli's declaration that Green had failed to return a garage door opener to Mrs. Green as ordered by the court on July 31. Uccelli took the contempt hearing off calendar when Green returned the garage door opener.

On September 4, 1986, with the dissolution action still pending,[4] Green filed a complaint against Uccelli for damages for invasion of privacy, malicious prosecution, abuse of process, and intentional infliction of emotional distress, which is the subject of this appeal. In his demurrer and motion to strike each cause of action of that complaint, Uccelli requested the trial court to take judicial notice of "all documents, papers, proceedings, and

---

[1] Appellant Green, an attorney, represented himself in this action, both at the trial level and on appeal. In the underlying nullity and dissolution action he also represented himself as counsel or cocounsel.

[2] Mr. Green sued Mr. Uccelli, but not the former Mrs. Green. Thus we need not determine whether there is any reason why our holding would not be the same as to the client if she had also been sued.

[3] On August 15, the San Francisco Superior Court ordered, "That the files and papers on file in this proceeding shall be deemed confidential, and shall not be available for the inspection of any person who is not a party to the within proceeding, or any counsel of record for such party in this proceeding, until further Order of Court. All documents and records in the file shall be confidential for all purposes and the Clerk of the Superior Court is Ordered to segregate the file, in conformity with this Order."

On August 23, the Superior Court of San Mateo, where the case was ultimately heard, issued an almost identical order.

[4] Evidently, judgment in the dissolution action was entered in June 1987, and an appeal is currently pending in this court.

records" in the underlying dissolution action. (Evid. Code, § 452, subd. (d).) The trial court granted the request, sustained the demurrer to the entire complaint without leave to amend, and dismissed the action.

██ ██ "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We also consider matters which may be judicially noticed.' Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citations omitted.)

## I.

██ In his first cause of action for invasion of privacy Green alleged that "from and after the approximate date of September 25, 1985," in violation of the confidentiality orders, Uccelli "caused to be published" among unspecified persons unspecified "particulars of the domestic relations dispute, and other facts," subjecting him to "public notoriety and disregard."

The trial court found these allegations failed to set forth ultimate facts constituting the right to privacy, wrongful invasion or resulting injury. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 695, p. 146.) Green maintains he stated a cause of action for invasion of privacy based on article I, section 1 of the California Constitution and/or the common law tort of public disclosure of private facts.[5]

██ One of the principal "mischiefs" at which the constitutional privacy provision is directed is "the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party." (*White* v. *Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222].) ██ "As discerned from the decisions of our courts, the public disclosure tort contains the following elements: (1) public disclosure (2) of a private fact (3) which would be

---

[5] Although Green repeatedly contends the disclosures placed him in a "false light," he does not challenge the accuracy of the information allegedly published. (See *Diaz* v. *Oakland Tribune, Inc.* (1983) 139 Cal.App.3d 118, 126 [188 Cal.Rptr. 762].)

offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." (*Diaz v. Oakland Tribune, Inc., supra,* 139 Cal.App.3d at p. 126.)

 Green's allegations are indeed too vague to state a cause of action under either theory. The trial court also found Green could not rectify this defect by amendment because his "uncertain and conclusionary allegations . . . are contrary to facts of which judicial notice was taken." As a rule, "a demurrer tests the sufficiency of the complaint alone and not the evidence or other extrinsic matters. Thus, a demurrer ordinarily lies only where a defect appears on the face of the complaint. . . . [¶] However, a complaint may be read as if it included matters judicially noticed. Such matters may show the complaint fails to state a cause of action though its bare allegations do not disclose the defect." (*Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 590 [226 Cal.Rptr. 855], citations omitted.)

 The trial court stated, "To the extent [the first cause of action] is based on a violation of the order referred to therein, judicial notice of said order establishes the same does not state nor have the effect alleged by plaintiff, and to that extent the allegations of the purported First Cause of Action are contrary to facts of which judicial notice was taken." The trial court thus accepted Uccelli's contention that the confidentiality orders did not restrain him, but applied only to the superior court clerk. We agree.

It is clear from Green's pleading, as from his statements to this court at oral argument, that this cause of action is based upon his contention Uccelli violated the court's order sealing the file in the underlying dissolution action. If there is any validity to this contention, Green should have brought it to the attention of the court in the dissolution action and obtained that court's assistance in enforcing the order. That court certainly possesses the power to enforce its own orders under Code of Civil Procedure section 128 and its inherent power to control the court's processes.

Green never attempted to enforce the order in the dissolution action. Probably this is because Uccelli's contention is correct: the court's order *at most* directed the clerk of the court to keep the file sealed from public view. Indeed, the authorities Green relied on to obtain this ex parte order, Civil Code sections 4309, 4351.5 and 4360, do not authorize sealing the file. Section 4309, which relates to premarital examinations, is not relevant here. Section 4351.5 refers to the confidentiality of child custody and visitation mediations which are confidential by statute without any court order. Section 4360 only authorizes, under limited circumstances, the exclusion of the public from a family law trial. The only case Green cited in seeking the order sealing the file was *Whitney v. Whitney* (1958) 164 Cal.App.2d 577

[330 P.2d 947], which did not discuss sealing a file, only the closing of a hearing to the public.

 In order to state a cause of action for invasion of privacy, Green must allege that Uccelli publicly disclosed private facts, not that he violated a court order. The contents of the file of a divorce proceeding are "historically and presumptively" a matter of public record. (*Pantos* v. *City and County of San Francisco* (1984) 151 Cal.App.3d 258, 263 [198 Cal.Rptr. 489].) In short, as an attorney, Green should have realized that when he filed his action for dissolution in superior court he was entering a public forum which would result in public disclosure of private facts. Indeed, during the dissolution action Green himself virtually relinquished any right of privacy as to matters in the dissolution when he filed in the public record of this court a writ of mandate which included more than 50 pages of material relating to his dissolution of marriage.[6]

## II.

 In his second and fourth causes of action Green alleged malicious prosecution based on Uccelli's allegedly false declarations in support of the two orders to show cause re contempt issued by the superior court in the underlying dissolution action. "To sustain an action for malicious prosecution of a civil proceeding the plaintiff must establish that the prior action: (1) terminated in his or her favor, (2) was filed without probable cause, and (3) was initiated by the defendant(s) with malice." (*Walsh* v. *Bronson* (1988) 200 Cal.App.3d 259, 263-264 [245 Cal.Rptr. 888].)

 Among other findings, the trial court found that Green failed to allege ultimate facts regarding a favorable termination of the underlying proceeding, and that documents in the dissolution action, of which judicial notice was taken, disclosed, contrary to Green's conclusionary allegations, that "there was no favorable termination of said ancillary proceedings." Thus Green could not truthfully amend his complaint to allege a favorable termination of the marital action.

Uccelli asserts Green cannot allege or prove favorable termination because a defendant's voluntary dismissal with prejudice of an order to show cause re contempt does not constitute a termination in plaintiff's favor. (*Chauncey* v. *Niems* (1986) 182 Cal.App.3d 967, 976-977 [227 Cal.Rptr. 718].) With regard to voluntary dismissal we agree with *Chauncey,* especially in family law litigation. In any event, in *Lossing* v. *Superior Court* (1989) 207 Cal.App.3d 635 [255 Cal.Rptr. 18], we recently held more broadly that

---

[6]Because we hold Green cannot truthfully allege the privacy element of his first cause of action, we need not consider the trial court's additional finding that the alleged publication was privileged under Civil Code section 47, subdivision 2.

*not prevailing* on an order to show cause re contempt brought to enforce a prior court order in ongoing litigation cannot constitute the basis for a malicious prosecution action against the attorney for the moving party. We disagree with dicta to the contrary in *Chauncey* at pages 973-976, upon which Green relies.

Clearly there has been no favorable termination of the underlying dissolution action in Green's favor, since his appeal from the court's judgment is pending before this court. Green's complaint relates to orders to show cause re contempt initiated by Uccelli which were taken off calendar. We extend our decision in *Lossing* to hold that bringing orders to show cause re contempt which are taken off calendar before hearing cannot constitute the basis for a malicious prosecution action against the attorney for the moving party. If the proceedings were brought in bad faith or for harassment or other improper purpose, relief is appropriately sought through a request for attorney fees and sanctions within the underlying action, not through an independent action for malicious prosecution. (See *Lossing* v. *Superior Court, supra,* 207 Cal.App.3d 635, 636.)

The elimination of fault as a prerequisite for dissolving a marriage, and the inadmissibility of evidence of fault, have not eliminated the bitterness that parties to a marriage frequently feel at the time of its breakup. Often one of the parties thought, until the petition for dissolution was served, that he or she had a successful and happy marriage. Compounding the bitterness from the breakup is the devastating nature of the issues involved in marital dissolution actions. These cases are not just claims for damages. Spouses are deeply concerned and fearful about losing custody of or contact with their minor children. Division of property, including possible loss of one's home, also inflames bitter feelings. The spouse requiring financial support is afraid the amount ordered will be inadequate to allow him or her to survive, while the spouse called upon to provide support worries the amount ordered will be so great that he or she will be unable to survive on what is left. Last, but certainly not least, the separation all too often occurs as a result of physical or verbal abuse. Considering all of these circumstances, it is certainly understandable that bitterness already existing between the parties is increased by the litigation process itself.

In adopting and regularly amending the Family Law Act, the Legislature has done its best to provide a process which reduces acrimony as much as is possible in our adversary system of justice. Family law judges in California have struggled diligently to make the judicial process less acrimonious. Since certification of family law as a specialty by the State Bar of California, most certified family law specialists conduct their practices in a manner which minimizes aggravation of existing bitter feelings. However, given the deeply personal nature of the issues discussed above, and despite best efforts

of the Legislature, the bench and the bar, it is not surprising there is still considerable bitterness between spouses whose marriage is being dissolved. Each often blames the other for the breakup of the marriage. When spouses suddenly see their world crumbling before their very eyes, and feel helpless to do anything about it, their perspective becomes distorted.

In this atmosphere, the judge hearing the domestic relations calendar must regularly issue orders which do not and most often cannot satisfy either party. The orders may be difficult to perform, or to perform in a timely manner. For these reasons, motions for enforcement of orders, if granted at all, must be ruled upon utilizing justice and equity as the family law judge's guideposts. Orders to show cause re contempt are often brought to seek the court's assistance in enforcing its previous orders. As here, such proceedings are frequently taken off calendar when compliance occurs before the hearing. Even if heard, denial of orders to show cause re contempt often occurs not because there has been compliance, but because the moving party is unable to prove *beyond a reasonable doubt* that the failure to comply was wilful or occurred with the ability to comply with the court's order.

For these reasons, the mere fact that an order to show cause re contempt in a dissolution action is taken off calendar, or is discharged by the court after a hearing, cannot constitute the basis for an independent civil action for malicious prosecution against the attorney bringing the order to show cause. Any decision to the contrary would have a chilling effect upon access to the courts to enforce orders and upon the vigorous legal representation to which the client is entitled. (See *Lossing* v. *Superior Court, supra,* 207 Cal.App.3d at p. 639, see also *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 872 [254 Cal.Rptr. 336, 765 P.2d 498].)

In *Chauncey* v. *Niems, supra,* 182 Cal.App.3d at pages 978-980, the court urged heightened scrutiny of the malice element of malicious prosecution actions in the marital dissolution context. It reasoned that "a strong policy favors access to the court in family law matters; the courts must remain open to claims seeking to modify or enforce spousal support or similar awards. On the other hand, the courts must scrutinize carefully a malicious prosecution action based on such a claim. If they did not, some parties with legitimate claims would be discouraged from coming into court.

"To hear malicious prosecution claims in any but the most egregious cases would unduly encourage litigation of this sort. Unlimited access to a forum in which to litigate malicious prosecution claims based on marital dissolutions would clog the courts, and exacerbate and prolong what is ordinarily an acutely unhappy state of affairs. In the family law and marital dissolution context, malice requires a more convincing and more precise

showing than a mere inference. In short, in our view, the element of malice should be assessed according to a high, strict standard. . . . .

"We perceive a vital distinction between the ill will, agitation, and indignation which may occur during or after dissolution, and the malice essential to a malicious prosecution action. In the marital dissolution context, the showing of malice in a malicious prosecution action must be convincing as to its egregiousness, and the scrutiny devoted to it by the courts minute. Although that high threshold may not be insurmountable, we find that the plaintiff's allegation of malice in the case at bench falls short of reaching it, and fails to survive such scrutiny." (182 Cal.App.3d at pp. 979-980.)

The same rationale underlies our holding in this case. In a marital dissolution action, more than in any other kind of proceeding, the trial court clearly possesses the power to cure any inappropriate use of orders to show cause re contempt by an attorney for a party. The family law court has the same power available in all civil actions to impose monetary sanctions pursuant to Code of Civil Procedure section 128.5 if the contempt proceeding was brought in bad faith, without merit or for harassment. (See *Weisman* v. *Bower* (1987) 193 Cal.App.3d 1231 [238 Cal.Rptr. 756].) In enacting section 128.5 the Legislature specified, "It is the intent of this legislation to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized by the interpretation of the law in Baugess v. Paine (1978) 22 Cal.3d 626." (Stats. 1981, ch. 762, § 2, p. 2968.)

In addition, the court in a dissolution action has always been authorized to make orders for attorney fees based on need and ability to pay. (Civ. Code, § 4370.) The Legislature recently provided an additional and very powerful tool to combat inappropriate conduct of counsel in family law cases, one which is not available in other cases. In enacting Civil Code section 4370.5, it adopted a policy in family law cases to promote settlement and reduce the costs of litigation by encouraging cooperation between the parties and attorneys. To the extent this policy is frustrated, the court is authorized under section 4370.5 to award attorney fees, not based upon need and ability to pay, but as a sanction for such conduct. (See *In re Marriage of Norton* (1988) 206 Cal.App.3d 53 [253 Cal.Rptr. 354], and *In re Marriage of Melone* (1987) 193 Cal.App.3d 757 [238 Cal.Rptr. 510].)

Thus the Legislature has provided specific and speedy remedies for what Green alleges was Uccelli's improper conduct in filing orders to show cause re contempt. It would be absurd to allow a separate malicious prosecution action to be filed when full compensation for any loss incurred in responding to an inappropriate motion can be obtained in the underlying action as part of the hearing on the motion.

Finally, one further alternative available to Green to punish any unprofessional conduct by opposing counsel was to report it to the State Bar of California. Although this alternative would not provide compensation, it would result in disciplinary action if the conduct were determined to have been unprofessional.

At oral argument Green conceded he did not seek sanctions under Code of Civil Procedure section 128.5, attorney fees under Civil Code section 4370 or attorney fees as a sanction under Civil Code section 4370.5. He also acknowledged he had not reported what he alleges was unprofessional conduct to the State Bar of California.

We are left to conclude that Green's conduct in bringing this action was in retaliation for Uccelli having had the nerve to vigorously represent Mrs. Green in the dissolution action. Such motivation, if true, is degrading to Green and to the profession of which he is a member.

## III.

In his third and fifth causes of action Green alleged abuse of process and in his sixth cause of action he alleged intentional infliction of emotional distress, all based on the same facts as his malicious prosecution claim. ▮▮▮ The trial court found these causes of action barred by the absolute privilege which Civil Code section 47, subdivision 2, accords to publications made in a judicial proceeding. ▮▮▮ This statutory privilege applies to virtually all causes of action except malicious prosecution (*Ribas* v. *Clark* (1985) 38 Cal.3d 355, 364 [212 Cal.Rptr. 143, 696 P.2d 637, 49 A.L.R.4th 417]), and attaches where "the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law." (*McKnight* v. *Faber* (1986) 185 Cal.App.3d 639, 649 [230 Cal.Rptr. 57].)

▮▮▮ Green's only claim is that "the matter of privilege may not be recited, plead nor proved upon Demurrer." On the contrary, "Where the existence of privilege is disclosed on the face of the complaint, the privilege is available as a matter of defense on demurrer." (*Whelan* v. *Wolford* (1958) 164 Cal.App.2d 689, 693 [331 P.2d 86].) Neither of the cases Green cites is on point. In *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289 [113 Cal.Rptr. 113], a summary judgment case (*id.,* at pp. 294-295), the court held the privilege inapplicable where the publication "has no logical relation or connection with" a judicial proceeding. (*Id.,* at pp. 301-302.) In *Fuhrman* v. *California Satellite Systems* (1986) 179 Cal.App.3d 408 [231 Cal.Rptr. 113], the court concluded the trial court erred in finding absolute privilege at the demurrer stage where the complaint raised a factual question as to whether

certain demand letters fell within the privilege extended to communications preliminary to a proposed judicial proceeding (see *Financial Corp. of America* v. *Wilburn* (1987) 189 Cal.App.3d 764, 773 [234 Cal.Rptr. 653]), that is, whether the letters really were published in serious contemplation of litigation. (*Fuhrman* v. *California Satellite Systems, supra,* 179 Cal.App.3d at pp. 420-423.)

 For the reasons stated in our discussion of Green's causes of action for malicious prosecution, we hold that filing orders to show cause seeking to enforce prior court orders in a dissolution action cannot constitute a basis for independent actions for abuse of process or for intentional infliction of emotional distress against the attorney for the moving party. This is true whether the order to show cause re contempt is voluntarily taken off calendar or is heard and discharged by the court. Obtaining relief from the court in the underlying action, as previously discussed, is the proper remedy in the event of inappropriate conduct by counsel.

### IV.

 Although it appears this appeal, as well as the action itself, were brought for harassment or other improper purposes, we must decline to award sanctions on appeal as requested by Uccelli. Green relied upon dicta in *Chauncey* v. *Niems, supra,* 182 Cal.App.3d 967, as the basis for his malicious prosecution claims. Although we disagree with the dicta, we are precluded from imposing sanctions upon Green by the Supreme Court's holding in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].

The judgment is affirmed.

Low, P. J., and Haning, J., concurred.