Filed 126/16  Marriage of Garlinger CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of CHERYL and JOHN GARLINGER. | 2d Civil No. B256560 (Super. Ct. No. D334232) (Ventura County) |
| CHERYL GARLINGER,<br><br>  Appellant,<br><br>v.<br><br>JOHN GARLINGER,<br><br>  Respondent. | |

Cheryl Garlinger appeals an April 11, 2014 post-judgment order increasing her spousal support from $2,250 to $3,000 a month.  Cheryl[1] contends that the trial court abused its discretion in not ordering her ex-husband, John Garlinger, to pay $5,250 a month support.  We affirm and deny John's request for sanctions.  (Cal. Rules of Court, rule 8.276(b)(1); *Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1450 [discussing former rule 26(e)].)  We also deny appellant's request for sanctions.

---

[1] For the sake of clarity and convenience to the reader, we refer to the parties by their first names.  No disrespect is intended.

*Facts & Procedural History*

Cheryl and John separated on June 25, 2009, ending a 22-year marriage. They have two children who are now emancipated.

Following trial, a judgment of marital dissolution was entered on October 7, 2011 dividing the community assets and debts. John was ordered to pay $3,123 a month child support[2] and $2,250 spousal support based on the following support findings: John's gross monthly income was $17,414 as a FedEx commercial pilot. Cheryl's imputed income was $1,733 a month income based on her education, prior employment as a geologist, and ability to work. The spousal support order included a *Gavron* warning (*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 711-712) that Cheryl was to make reasonable good faith efforts to find permanent, full-time employment and be employed by at least June 2014 when the youngest child graduated from high school. The judgment provided that termination of child support would not constitute an "automatic" change of circumstances to support an increase in spousal support. (Fam. Code, § 4326, subd. (d).)[3]

*OSC to Modify Support*

After judgment was entered, Cheryl delayed looking for work and got a job as a substitute teacher in the Spring of 2013, almost four years after date of separation. Cheryl, however, was injured in an auto accident on April 13, 2013 and stopped working. Rather than sue for personal injuries, Cheryl filed an OSC to modify support. Because John's monthly income as a commercial pilot varied, the trial court used John's 2013 average monthly income, $19,210 a month, which represented a $2,300 per month increase in income since time of trial in 2011 ($17,414).

At the hearing on the OSC, Cheryl claimed that she suffered from asthma, high blood pressure, degenerating cervical disks and hip pain, all of which was aggravated by the April 2013 car accident and precluded her from working. The trial

___

[2] In 2013, child support was reduced to $2,544 a month.

[3] All statutory references are to the Family Code unless otherwise stated.

2

court found that Cheryl was afflicted with pain but not disabled from gainful employment. It found that Cheryl has sophisticated, marketable skills and abilities and "did not, at any point in time, commit herself full time to the 'process' of finding a job which would maximize her ability to earn." [4] Based on Cheryl's education, past employment as a geologist, and marketable skills, the trial court ruled that Cheryl's imputed income was in excess of $40,000 a year. The court credited the testimony of John Meyers, a vocational expert, that Cheryl could get CAD training to enhance her marketable skills as a geologist and obtain full time employment that would accommodate her medical impairments.

Based on John's earnings, the trial court increased spousal support from $2,250 to $3,000 per month. It found that "[t]his alone will provide Wife with an annual gross income of $36,000 per year. Combined with annual earnings imputed to Wife of $45,000, the court finds that approximately $80,000 would enable wife to live at the standard of living established during the marriage." Based on Cheryl's need and John's ability to pay, the trial court ordered John to pay Cheryl $10,000 attorney's fees and denied John's request for sanctions.

*Discussion*

We review for abuse of discretion. (*In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1235.) "The standard rule that modifications in support orders may only be granted if there has been a material change of circumstances since the last

---

[4] Before the hearing to modify support, Cheryl discharged many debts in bankruptcy including debts associated with the family home, consumer debts, and her share ($58,300) of a loan due and owing to John's father. Because of the bankruptcy discharge, John was required to pay Cheryl's $58,300 debt obligation which John claimed was a material change of circumstances for a $750 reduction of spousal support. The trial court found that John's increased earnings placed him in a better position to bear the additional financial burden. It concluded that the bankruptcy significantly improved Cheryl's economic situation and weighed heavily against her with respect to an increase in spousal support. (§§ 4320, subd. (d) [wife's needs reduced]; 4320, subd. (e) [wife's obligations reduced]; 4320, subd. (k) [balance of hardships changed].)

3

order [citation] was designed to *prevent* repeated attempts to modify support orders without justification, not to circumvent the goal that supported spouses become self-supporting within a reasonable period of time. [Citation.]" (*In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 803-804.)

Cheryl contends that the support order is too low and not supported by the evidence. Cheryl, however, elected to proceed without a reporter's transcript. (See *Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.) Where the appeal is based on the clerk's transcript or "judgment roll," it is conclusively presumed that the evidence presented is sufficient to support the trial court's findings. (*In re Estate of Fain* (1999) 75 Cal.App.4th 973, 992.) Although Cheryl is proceeding in propria persona, she is "treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.)

Cheryl makes the following arguments with no citation to the record, which in itself, is fatal to the appeal. (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) "Issues do not have a life of their own; if they are not raised or supported by argument or citation to authority, we consider the issues waived. [Citations.]" (*Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

*Alleged Bias Of Trial Judge*

Cheryl contends that the trial judge was biased and did not give Cheryl the opportunity to provide any "input" in the ruling. Cheryl was afforded two opportunities to draft a settled statement and submitted a proposed settled statement consisting of misleading, partisan statements. (See e.g*., Burns v. Brown* (1946) 27 Cal.2d 631, 634.) The trial court found that the proposed settled statement was "fractured, distorted, biased, conclusionary," and failed to comply with California Rules of Court, rule 8.137(b). John's attorney was directed to prepare a settled statement that summarized the proceedings. We reject the argument that the trial court engaged in judicial favoritism.

In an ad hominem attack on the trial court and John's attorney, Cheryl argues that she was denied due process, that John failed to comply with discovery, and

that the expert testimony was manipulated.  None of this is supported by the record.  "Ad hominem arguments, of course, constitute one of the most common errors in logic: Trying to win an argument by calling your opponent names . . . only shows the paucity of your own reasoning."  (*Huntington Beach City Council v. Superior Court* (2002) 94 Cal.App.4th 1417, 1430.)

Cheryl complains that the trial court "ignored" the evidence and erred in not increasing spousal support to $5,250 a month.  "The trial court sits as trier of fact and it is called upon to determine that a witness is to be believed or not believed.  That is the nature of fact finding.  'The trier of fact is the sole judge of the credibility and weight of the evidence. . . .' [Citation.]"  (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.)  As a reviewing court, we do not reweigh the evidence of redetermine the credibility of witnesses.  (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.)  We reject the argument that the order modifying support should be "rewritten" or that a new trial judge should be assigned to the case.

*Medical Expert Testimony*

Cheryl argues that the trial court erred in not crediting the testimony of her medical expert who opined that Cheryl is not able to work full time.  The court adopted the recommendations of John Meyers, a vocational expert, who reported that appellant had the job skills and physical ability to be gainfully employed.  Appellant requests that we review the matter de novo, but we are precluded from reweighing the evidence or determining the credibility of expert witnesses.  (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 204.)

Cheryl's medical problems were litigated in 2011 and factored into the support order.  The judgment of dissolution provides that Cheryl "will either need to seek remedial surgery for her hip and back problems to which she testified or find an employment situation which accommodates her current disabilities . . . ."  The 2011 judgment warned "that the burden is on [Cheryl] to seek appropriate medical treatment for her orthopedic and asthmatic condition.  To the extent [Cheryl] arbitrarily refuses or declines to undertake and complete available treatment programs, such evidence will

5

contradict any argument that she has made a good faith effort toward her own rehabilitation and physical well-being and efforts to become self-supporting."  Substantial evidence supports the finding that Cheryl did not diligently seek gainful employment and is able to work full time notwithstanding her medical condition.  (See e.g., *In re Marriage of Berland* (1989) 215 Cal.App.3d 1257, 1262-1263.)

*Spousal Support*

Cheryl contends that spousal support should be increased to $5,250 per month, the amount John paid before the children became emancipated.  The 2011 judgment provides that termination of child support will not increase spousal support and "the Court expects [Cheryl] to be more self-sufficient at that time."

Cheryl claims that John earns $279,000 a year and that misrepresentations were made about John's job title, income, and rental income.  John's income is documented in his Income and Expense Declaration and paystubs.  His  income varies depending on his flight schedule, as evidenced by his W2 statements which reflect $217,981 gross income in 2012 and  $202,236 gross income in 2013.  There is no evidence that John's income is or ever has been $279,000 a year.

Cheryl argues that spousal support should be commensurate with the upper middle class standard of living that she enjoyed during the marriage.  (§ 4320, subd. (d).)  In 2011, the trial court described the parties' marital standard of living as "middle class" at time of separation.  "[A]lthough the marital standard of living is an important factor in determining spousal support, it is not the only factor, and its importance in determining whether it is 'just and reasonable' (§ 4330) to award spousal support will vary based on the court's evaluation of the section 4320 factors."  (*In re Shaughnessy, supra,* 139 Cal.App.4th at p. 1247.)   This is so because the policy of the law is to encourage self-support.  (§ 4320, subd. (l); *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525.)  The marital standard of living was not intended, and never has been viewed as the sole determinative factor in adjudicating spousal support.  (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 307; *In re Marriage of Ackerman, supra,* 146 Cal.App.4th at p. 207.)

Cheryl claims that John disobeyed a prejudgment order to make the mortgage payments and was $28,000 in arrears on child support until child services made him bring the support payments current. These matters were resolved at the 2011 trial and are irrelevant to the post-judgment order modifying support.

Cheryl's remaining arguments have been read and considered and merit no further discussion.  Cheryl was afforded the opportunity to present her case and had, in every sense of the term, a fair trial.  It has been a contentious and costly divorce for both sides, as evidenced by the 12-volume superior court file.  "Somewhere along the line, litigation must cease."  (*In re Marriage of Crook.*  (1992) 2 Cal.App.4th 1606, 1613.)

*Sanctions*

John argues that the appeal is frivolous and warrants sanctions.  (Code Civ. Proc., § 907; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  We deny the request for sanctions because John has not complied with California Rules of Court, rule 8.276(b)(1) which requires that the motion for sanctions "include a declaration supporting the amount of any monetary sanction sought. . ." (See Eisenberg et al., Cal. practice Guide, Civil Appeals and Writs (Rutter 2015), [¶]  11:129, pp. 11-56 to 11-57; *Estate of Gilkison, supra,* 65 Cal.App.4th at p. 1450; *In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 180.)

Cheryl has filed a cross motion for $4,000 sanctions, arguing that John's sanctions request is frivolous and intended to harass Cheryl for bringing the appeal. Cheryl's supporting declaration is not verified (Code Civ. Proc. § 2015.5) and does not factually support an award for monetary sanctions.  (Cal. Rules of Ct., rule 8.276(b).) The record reflects a prolonged, bitter, and expensive legal battle which, at this point in time, has become counter-productive for both sides. "When spouses suddenly see their world crumbling before their very eyes, and feel helpless to do anything about it, their perspective becomes distorted." (*Green v. Uccelli* (1989) 207 Cal.App.3d 1112, 1122.) So too here.  We will not fuel the fire already stoked between the parties by assessing sanctions against either one.

7

*Conclusion*

The judgment (order modifying spousal support) is affirmed.  John is awarded costs on appeal.  The motion and cross-motion for sanctions are denied.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

R. Smiley, Judge

Superior Court County of Ventura

_____

Cheryl Garlinger in pro per, Appellant.

Edwin Clark; Goldenring & Prosser, for Respondent.