[No.·6,567.—Department No. 1.]

## LUCAS v. PICO.

PROMISSORY NOTE—CONSIDERATION—BARRATRY.—Information of an outstanding title to land, in the adverse possession of another, constitutes a good consideration for a promissory note, and the sale of such information is not barratrous.

NON-NEGOTIABLE CONTRACT—ASSIGNMENT.—A non-negotiable contract, indorsed in blank, passes by delivery, and the holder may, after the bringing suit, fill up the indorsement with a special assignment to himself.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial, in the Seventeenth District Court, County of Los Angeles. SEPULVEDA, J.

The facts are stated in the opinion.

*Glassell, Smith & Smith,* for Appellant.

. The consideration of the alleged instrument was barratrous. The information given was false, and utterly valueless. It was shown that Briswalters' title was good, independently of the Statute of Limitations; and that the controversy excited was groundless. (4 Black. C. (134) 96; Jacobs' L. D. title "Barrator"; Pen. Code, §§ 158–9; 1 Parsons' Cont. 456; 2 id. 746; Broom's Leg. Max. (573).)

The plaintiff was not the owner of the instrument sued upon. A non-negotiable instrument can be assigned *only by indorsement in writing.* (Civ. Code, § 1459.) This does not imply that it may pass by delivery merely.

*Bicknell & White,* for Respondent.

A non-negotiable instrument may be transferred by indorsement. (Civ. Code, § 1459.) No fraud was practiced upon the defendant. He paid for a doubtful title, and this is a sufficient consideration. (*Russell v. Cook,* 3 Hill, 505; *Reese v. Gordon,* 19 Cal. 149.)

McKEE, J.:

On the trial of this case, the defendant in the Court below objected to the offer of the promissory note in evidence, because

it appeared from the testimony that the consideration of the note was contrary to public policy and morality, and specially that it was barratrous; and because it also appeared that the note itself had not been assigned to the plaintiff before the commencement of the action; and as the plaintiff was not the legal owner thereof, he could not maintain the action. The defendant also moved for a nonsuit upon, substantially, the same grounds. Both his objections and motion were overruled by the Court, and he brings the case here on appeal for review.

The note which forms the subject-matter of controversy in the case is in the following words and figures:

"$800.                        LOS ANGELES, Oct. 22, 1877.

"At eight months from this date I promise to pay to F. P. Johnson, in person, for understood value, the sum of eight hundred dollars, in gold coin of the United States of America.

PIO PICO."

This note was given under the following circumstances: Juan de Toro, a searcher of records, while examining the records of deeds in the Recorder's office in Los Angeles County, discovered that two patents had been granted to the City of Los Angeles for city lands, and that there was a person in the adverse possession of a tract of those lands, the title to which, under one of the patents, was outstanding in another. On ascertaining this condition of the title, Toro associated with him one Johnson for the purpose of buying the outstanding title on speculation. To this end Johnson, in behalf of himself and Toro, communicated his information to the defendant. Defendant took counsel upon it, and, upon the legal advice which he received, he concluded to buy the outstanding title. For that purpose he agreed with Johnson to pay $2,000 for it, if the latter would obtain for him a deed from the owner. Johnson procured the deed, and when it was delivered to the defendant, the latter paid the purchase-money, and, at the same time, made and delivered to Johnson the note in controversy, and also made and delivered one of like import to Toro, for the information which they had given, and the services which they had rendered in procuring the title.

We see nothing in the transaction which violates good morals. It is not an immoral act to give information about an out-

standing title to a tract of land, which is in the adverse posses-
sion of another, or to render services in the acquisition of such
a title.   Nor is there anything in such a transaction which
would be likely to prove prejudicial to the morals of the com-
munity.   The law does not prohibit the purchase of such a
title; and any lawful act which has for its object the accom-
plishment of such a purpose cannot be considered as against
public policy or the policy of the law.   An act which does
not violate any rules or principles of law, and is not evasive
of anything which is established by law, or which the law aims
to promote, is not against public policy or the policy of the law.

Nor is the transaction barratrous.   Barratry is made an in-
dictable offense, both by common law and the Penal Code of
the State.   By the latter it is defined to be the practice of ex-
citing groundless judicial proceedings.   But no person can be con-
victed of such an offense, except upon proof that he has excited
suits or proceedings at law in at least three instances, and with
a corrupt or malicious intent to vex and annoy.   (Sec. 156, 159,
Pol. Code.)   Nothing in the transaction under consideration
tends to show that any of the parties concerned in it have foment-
ed or attempted to foment law-suits or quarrels about the prop-
erty which was the subject of the purchase.   They aided in
purchasing an outstanding title to it, the validity of which de-
pends upon the patent to the City of Los Angeles from which
the title is deraignable.   At common law such a purchase
would have been considered void; and it would not have been
a valid consideration for a promissory note or other contract,
for that law prohibited the acquisition of a title to land from
one who was not in the actual possession of the land.   The
maxim of the law as laid down by Lord Coke is, that nothing
in action, entry or re-entry, can be granted, for the reason that
under color thereof pretended titles might be granted to great
men, whereby right might be trodden down and the weak op-
pressed.   (4 Kent's Commentaries, 447.)   But that rule has
never prevailed in this State.   By the Civil Code of the State,
any person claiming title to real estate in the adverse pos-
session of another, may transfer it with the same effect as if
in actual possession.   (Sec. 1047 Civ. Code.)   To participate
in any capacity, whether as principal, or agent, or broker, in a

transaction for obtaining a transfer of title to land in that condition, is neither barratrous nor champertous. Being an act which is authorized by law, it is neither *malum in se* nor *malum prohibitum*. It is not indictable, nor subject to a penalty, or forfeiture; and it follows that the consideration of the contract in controversy was not against good morals or public policy, or tainted with barratry.

And the contract itself, though non-negotiable, was indorsable; for a non-negotiable contract is, by law, assignable by indorsement in like manner with negotiable instruments, subject, of course, to all equities and defenses existing in favor of the maker at the time of the indorsement. (Sec. 368 Code Civ. Proc., and § 1459 Civ. Code.) It is that which constitutes the principal difference between negotiable and non-negotiable contracts.

After the payee had specially indorsed the contract in this case and delivered it to his assignee, and the latter qualifiedly indorsed it, and delivered it to one Higgins, who sold and delivered it to the plaintiff, any subsequent holder from Higgins might take the same by mere delivery, and make himself the assignee of the last assignor by filling up the indorsement in his own name. But whether this was done or not, the holder was the proper party to sue; for the holder of a non-negotiable contract is presumptively the owner, and, as the real party in interest, he is entitled to maintain an action upon it in his own name. Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by law. (Sec. 367 Code Civ. Proc.) When, therefore, the Court permitted the plaintiff at the trial to fill up the indorsement on the contract to himself, we think there was no error which prejudiced the defendant. (*Poorman* v. *Mills & Co.* 35 Cal. 118.)

Judgment and order affirmed.

McKINSTRY, J., concurred.
Ross, J., concurred in the judgment.