Filed 7/3/13  Daneshrad v. Aryeh CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| JOSEPH DANESHRAD, | B241604 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC471679) |
| v. | |
| FERIAL ARYEH, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. John L. Segal, Judge.  Affirmed.

Law Offices of Joseph Daneshrad and Lyle River for Plaintiff and Appellant.

Law Offices of Farah Faramarzi, Farah Faramarzi; Law Offices of Michael Sabzevar and Michael Sabzevar for Defendant and Respondent.

_____

The trial court granted a special motion to strike a complaint pursuant to the Anti-Strategic Lawsuit Against Public Participation (Anti-SLAPP) statute.  (Code Civ. Proc., § 425.16.)  We affirm.

## FACTS

### *The Underlying Family Court Proceedings*

In 2009, Ferial Aryeh (Ferial) filed a petition to dissolve her marriage to Jamshid Aryeh (Jamshid).[1]  During the proceedings, the family court granted Ferial's ex parte application for an order directing Jamshid to sign a release form that would authorize Ferial to access information at Washington Mutual Bank regarding a line of credit that was under Jamshid's name alone.  Ferial contended the line of credit was secured by the family residence, and that Jamshid had borrowed money on the credit line and then failed to make payments, all without Ferial's knowledge until a notice of default was recorded against the property.

Ferial subsequently applied to the family court for an order to show cause (OSC) for contempt based on an allegation that Jamshid had not signed the release for the information at Washington Mutual Bank.  The papers filed for the OSC for contempt identified the "citees" as Jamshid and his attorney, Joseph Daneshrad.  The papers filed for the OSC for contempt alleged as to Jamshid that he had not signed the Washington Mutual Bank release form as ordered by the family court.  In other papers, Ferial's counsel expressly acknowledged that the OSC for contempt was also initiated as to attorney Daneshrad based upon his "blatant and open encouragement and assistance of [Jamshid]'s violation of the court order."[2]

---

[1]  We refer to the parties first names for ease of reference and mean no disrespect.

[2]  Without making any observation about the merits of the claims against attorney Daneshrad, we note in the abstract that an attorney who advises his client to violate a lawful court order may be held in contempt.  (See *Hawk v. Superior Court* (1974) 42 Cal.App.3d 108, 117 [direct contempt in court; attorney told court that he had advised his client not to give a lawful, court-ordered handwriting exemplar].)

2

In September 2009, the family court issued an OSC for contempt. The OSC was served on Jamshid and attorney Daneshrad. At a hearing in October 2009 on the OSC, attorney Daneshrad advised the family court that Jamshid had signed the release form, and it was handed over to the court for delivery to Ferial's counsel. At a later hearing in October 2009, Ferial's counsel withdrew the OSC as to attorney Daneshrad.[3]

*The Complaint for Malicious Prosecution and the Anti-SLAPP Motion*

In October 2011, attorney Daneshrad filed a complaint for damages against Ferial, separate from the family court proceeding noted above. Daneshrad's complaint alleged a single cause of action for malicious prosecution based upon Ferial's act of initiating the OSC as to Daneshrad in the family court proceeding.[4] The complaint alleged that Ferial had "no basis and no probable cause for seeking a contempt order" against Daneshrad. The complaint alleged that Daneshrad "was injured by way of attorney's fees incurred [defending against the OSC]," and by "injury to [his] reputation and social standing."

Ferial filed a special motion to strike the complaint pursuant to the Anti-SLAPP statute. (Code Civ. Proc., § 425.16.) The trial court granted Ferial's motion and the court entered judgment in her favor, including an award of attorney's fees in the amount of $16,712.50, plus costs of $475.

Daneshrad filed a timely notice of appeal.

## DISCUSSION

Daneshrad contends the trial court's order granting Ferial 's Anti-SLAPP motion must be reversed because a proceeding for an OSC for contempt wrongly initiated against an opposing party's lawyer supports a subsequent claim for malicious prosecution by the lawyer. In short, Daneshrad argues he stated a cause of action for malicious prosecution

---

[3] The hearing on the OSC for contempt went forward as to Jamshid. The family court eventually entered an order finding Jamshid in contempt for failing to timely sign the court's lawful directive to sign the release authorizing Ferial to look at the credit line information at Washington Mutual Bank.

[4] Daneshrad's complaint implicitly imputes all of the proceedings in the underlying family court proceeding to Ferial. Daneshrad's civil complaint does not name Ferial's counsel in the family law case, Patrick DeCarolis, Jr., as a defendant.

3

and he showed he can win it, and, as a result, his complaint should not have been stricken early pursuant to the Anti-SLAPP statute.  We disagree.

### *The Anti-SLAPP Statute*

The Legislature enacted the Anti-SLAPP statute to address the societal ills caused by meritless lawsuits filed to "chill" the exercise of the "constitutional rights," including the right to petition for the redress of grievances.  (Code Civ. Proc., § 425.16, subd. (a).) To this end, the statute authorizes a special procedure for striking certain causes of action at the earlier stages of litigation, when they are determined to be under the protective umbrella of the statute, and there is no probability that the plaintiff will prevail.

The Anti-SLAPP statute's procedure entails two steps.  In the first step, the court determines whether the moving defendant has made a threshold showing that a cause of action arises from so-called "protected activity," that is, "from any act of that person in furtherance of the person's right of petition . . . under the United States Constitution or the California Constitution in connection with a public issue . . . ."  (Code Civ. Proc., § 425.15, subd. (b)(1).)  When a court determines a moving defendant has made the required first-step showing that a challenged cause of action "arises from protected activity," the court then moves to the second step of the statute's special striking procedure, where the court determines whether the plaintiff has demonstrated a "probability" that he or she will prevail on his or her claim.  (See Code Civ. Proc., § 425.16, subd. (b)(1); and see. e.g. *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)  A cause of action is subject to being stricken under the Anti-SLAPP statute only when both steps of the statute's special striking procedure are established.

An appellate court reviews an order granting a special motion to strike under the de novo standard of review, meaning the appellate court undertakes the same two-step procedure as did the trial court. (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1651-1652.)

4

*Analysis*

A cause of action arising from litigation activity falls within the protective reach of the Anti-SLAPP statute because our state does not want its citizens to be chilled in exercising the constitutional right to seek redress of grievances through our state's courts. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733-741 (*Jarrow Formulas*); *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087-1088.) When Ferial instituted the underlying contempt proceeding in the family law case, she was engaged in protected litigation activity within the meaning of the Anti-SLAPP statute. Daneshrad expressly states in his opening brief on appeal that he does not contest that his cause of action for malicious prosecution arises from Fariel's "protected" petitioning activity.

This brings us to the second step of the special striking procedure authorized by the statute: determining whether Daneshrad has shown a "probability" that he will prevail on his cause of action for malicious prosecution against Ferial. In this inquiry, Daneshrad has the burden to demonstrate that his complaint is both legally sufficient and supported by a sufficient prima facie showing of evidence to sustain a judgment in his favor if his evidence is credited. (*Jarrow Formulas, supra,* 31 Cal.4th at p. 741.)

To prevail on a cause of action for malicious prosecution, a plaintiff must plead and prove that a prior action was (1) terminated in the plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871-872.)

Here, if the record does not disclose that Daneshrad had a viable cause of action for malicious prosecution, and that there is at least some evidence on each of the three elements noted above, then we must affirm the trial court's decision to grant Fariel's motion to strike Daneshrad's complaint. Daneshrad's arguments on appeal address the legal issue of whether there is an "absolute bar" against a cause of action for malicious prosecution when it is based on any order or order to show cause in a family law case. This legal issue involves the applicability of *Bidna v. Rosen* (1993) 19 Cal.App.4th 27 (*Bidna*). Although *Bidna* was not cited or argued in the moving papers or opposition papers that were filed in the trial court, the trial court relied predominantly on *Bidna* in

5

finding that Daneshrad could not prevail on his malicious prosecution claim against Fariel.

We find that *Bidna* applies here, and that under *Bidna*, Daneshrad cannot prevail on his malicious prosecution claim against Fariel. In *Bidna*, Division Three of the Fourth District Court of Appeal addressed whether there is an "absolute bar of malicious prosecution claims based on *any* kind of family law motion or OSC." (*Bidna, supra*, 19 Cal.App.4th at p. 34.) The court ruled there is such a bar. There, a wife and her attorneys, financed by the wife's mother, brought six "totally meritless ex parte applications and OSC's to change [child] custody." (*Id.* at p. 30, fn. omitted.) The Court of Appeal viewed the litigation activities as "egregious." (*Id.* at p. 34.) Husband filed a separate action for malicious prosecution. Although the opinion is not altogether specific, it suggests that husband's complaint named wife, her mother, and the attorneys who represented wife. In the context of demurrer, the trial court ruled that husband could not state a cause of action for malicious prosecution based on the ex parte applications and OSCs in a family law proceeding. (*Id.* at pp. 34-39.)

In concluding that a plaintiff cannot state a cause of action for malicious prosecution based on the ex parte applications and OSCs in a family law proceeding, the Court of Appeal "weigh[ed] the arguments both for and against a bright line rule [against stating a malicious prosecution claim arising from] family law cases." (*Bidna,* at p. 34.) Among the arguments in favor of such bright line rule are (1) the unique propensity for bitterness in family law litigation; (2) the unique ability of family law courts "to swiftly discourage litigious nonsense" by attorney fee awards and sanctions; and (3) the special sensitivity and flexibility that family law proceedings require. (*Id.* at p. 35.) Against these factors, the court recognized the potential inadequacy of family law remedies, and the limitations on remedies available to a wronged party. (*Id.* at p. 36.) After weighing the pros and cons, the Court of Appeal decided that a bright line rule barring malicious prosecution claims arising from orders and OSCs in a family law proceeding was the best result. (*Id.* at pp. 34-39.) The Supreme Court denied review. (*Id.* at p. 42.)

6

In summary, *Bidna* established this bright-line, absolute rule: *no person* who is involved in a family law proceeding as a party or as a lawyer, or who otherwise has some connection to the family law proceeding, *may be sued* for malicious prosecution based on orders or OSCs issued in the proceeding. The unavoidable corollary is that *no plaintiff may sue* any person who is involved in a family law proceeding as a party or as a lawyer, or who otherwise has some connection to the family law proceeding, for malicious prosecution based on orders or OSCs issued in the proceeding.

We agree with *Bidna*'s rule and reasoning. As did the Court of Appeal in *Bidna*, we acknowledge Daneshrad's alleged harms, and that denying a malicious prosecution claim will deny him the possibility of seeking damages apart from out-of-pocket losses, for example, damage for loss of reputation, emotional distress, and punitive damages. Daneshrad argues further that the availability of an independent malicious prosecution claim will deter bad acts in the family court. He argues that potentially troubling issues may arise when, as here, a spouse initiates a contempt proceeding against an opposing spouse *and his or her attorney*. Danseshrad argues that Fariel's contempt proceeding *against him* may have been intended to "chill" Daneshrad's representation of his client, or to create a conflict of interest that disrupted the attorney-client relationship. In short, Daneshrad essentially argues that an independent malicious prosecution claim should be viewed as a net positive.

Daneshrad's arguments do not persuade us that he must be allowed to pursue an independent lawsuit for malicious prosecution based on the OSC in the underlying family court proceeding, rather than seek (or have sought) remedies in the family court. *Bidna* largely considered the justifications offered by Daneshrad, but concluded a malicious prosecution claim should not be allowed when based on orders or OSCs in family law proceedings. We agree with *Bidna*'s reasoning, and agree that remedies in the family court, such as attorney fees and sanctions, would be sufficient to negate the need for independent lawsuits for malicious prosecution.

This brings us full circle to the issue before us on Daneshrad's appeal from the order granting Ferial's Anti-SLAPP motion — namely, can Daneshrad prevail? Under *Bidna*, Daneshrad cannot prevail. The motion was properly granted.

**Attorney Fees**

In an undifferentiated argument in his opening brief on appeal, Daneshrad contests the amount of attorney fees awarded to Ferial. He argues the trial court did not rely on the grounds argued in Fariel's motion to strike Daneshrad's complaint, implying that no fees should have been awarded. Further, Daneshrad argues Ferial's request for attorney fees was based on "totally padded, inefficient and duplicative" legal work. He questions Ferial's request for approximately $32,000 in attorney fees and costs, and asserts that the approximately $17,000 eventually awarded amounted to a "windfall."

The Anti-SLAPP statute provides that a prevailing defendant on a special motion to strike "shall be entitled to recover his or her attorney's fees and costs." (Code Civ. Proc., § 425.16, subd. (c)(1).) The statute is interpreted to authorize an award of reasonable attorney fees and costs. (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 362.) The determination of reasonable attorney's fees lies within the discretion of the trial court. (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340.) Daneshrad's superficial argument on appeal does not persuade us that an award of $17,000 for the Anti-SLAPP motion here is unreasonable and, thus, an abuse of discretion.

**DISPOSITION**

The judgment is affirmed. Respondent Ferial Aryeh is awarded her costs on appeal, including reasonable attorney fees. (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 659.)

BIGELOW, P. J.

We concur:

FLIER, J.        GRIMES, J.

8